The People of the State of New York ex rel. The City of Niagara Falls, Appellant, *v.* The New York Central and Hudson River Railroad Company, Respondent.

1. Taking Street across Railroad Tracks — Repeal of Act of 1853 by Grade Crossing Act of 1897 — Procedure. The act of 1853 (Ch. 62), regulating the construction of streets across railroad tracks, was repealed by the act of 1897 (Ch. 754), relating to grade crossings; and since July 1, 1897, the date on which the latter act took effect, the procedure provided by that act must be resorted to in all attempts to take a street across the tracks of a steam railroad, unless a right to institute a proceeding by mandamus to compel a railroad to comply with the act of 1853 was acquired by the municipality, and the proceeding was commenced, prior to July 1, 1897, in which case the right to prosecute the proceeding to the end in the courts is preserved by section 31 of the Statutory Construction Law (L. 1892, ch. 677).

2. Mandamus Proceeding Commenced after Grade Crossing Act Took Effect. Where a municipality, after having served, prior to the passage of the Grade Crossing Act of 1897, a thirty days' notice under the act of 1853 upon a steam railroad company, to take a street across its tracks, extended the time for performance to a date subsequent to July 1, 1897, and thereafter commenced a proceeding for a mandamus to compel the company to comply with the notice, a denial of the writ was proper.

*People ex rel. City of Niagara Falls* v. *N. Y. C. & H. R. R. R. Co.*, 31 App. Div. 334, affirmed.

(Argued February 27, 1899; decided March 14, 1899.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, made June 18, 1898, affirming an order of Special Term denying a motion for a peremptory writ of mandamus to compel the defendant to carry Tenth street, in the city of Niagara Falls, across the tracks of its railway.

The facts, so far as material, are stated in the opinion.

*Morris Cohn, Jr.,* for appellant. The notice served under the statute of 1853, and the omission of defendant to obey it, gave a right to the writ applied for to relator, which right is not affected by chapter 754 of the Laws of 1897. (*People ex rel.* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 570; L. 1897,

ch. 754; *Matter of North Third Avenue*, 32 App. Div. 394;
*Lazarus* v. *M. E. R. Co.*, 145 N. Y. 581; *Devlin* v. *Mayor*,
*etc.*, 4 Misc. Rep. 120; *People* v. *England*, 91 Hun, 152.)
The determination of the court upon the application was not
discretionary, and the extraneous matters since urged should
not be considered in the disposition of this case. (*People ex
rel.* v. *Common Council*, 78 N. Y. 56; *People ex rel.* v. *Cha-
pin*, 104 N. Y. 96.)

*Daniel H. McMillan* for respondent.    The affidavit read
on behalf of the defendant in opposition to the application for
a peremptory writ of mandamus has not been controverted;
the facts set forth on behalf of defendant stand admitted.
The motion is, therefore, in the nature of a demurrer. (*Peo-
ple ex rel.* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 570.)
The right to apply for a mandamus under the act of 1853, did
not accrue until the 7th day of July, 1897, six days after the
repeal of the act.    The proceedings were not instituted until
December, 1897, more than five months after the act of 1853
had been repealed. (*Matter of Prime*, 136 N. Y. 347; *Stock-
ing* v. *Hunt*, 3 Den. 274; *Gale* v. *Wells*, 7 How. Pr. 191;
L. 1897, ch. 754, § 61; *Lazarus* v. *M. E. R. Co.*, 145 N. Y.
581.)    The court at Special Term having exercised its discre-
tion, and denied the application that a peremptory writ of
mandamus issue, the court on appeal will not reverse or
modify the order except where there has been a clear abuse
of the court's discretionary power. (*People ex rel.* v. *McGold-
rick*, 67 N. Y. S. R. 289; *St. Stephen's Church Cases*, 25 Abb.
[N. C.] 230; *People ex rel.* v. *Wendell*, 71 N. Y. 171; *People ex
rel.* v. *Ferris*, 76 N. Y. 326.)    Unless Tenth street was opened
and worked within six years from the time it was laid out, it
ceased to be a street.    This fact does not appear.    It being
jurisdictional, it should appear in the petition. (1 R. S. [9th
ed.] 704, § 99; *People ex rel.* v. *N. Y. C. & H. R. R. R.
Co.*, 69 Hun, 166.)

PARKER, Ch. J.    We held in *People ex rel. City of Buf-
falo* v. *New York Central & Hudson R. R. R. Co.* (156 N.

Y. 570) that the effect of the provisions of section 31 of the Statutory Construction Law (Laws of 1892, chap. 677) is to preserve a proceeding pending in a court to compel a railroad to take a street across its tracks after the preliminary steps have been taken as provided by chapter 62 of the Laws of 1853, notwithstanding the repeal of such act by chapter 754 of the Laws of 1897. In that case the city of Buffalo had not only acquired the right to compel the railroad to take a street across its tracks, but it had also instituted proceedings by mandamus to effectuate that result before the act of 1897 went into operation, and the right to prosecute a proceeding thus commenced to final effect, notwithstanding the repeal of the statute authorizing it, is preserved by the section of the Statutory Construction Law to which we have referred.

This case presents an entirely different situation; for when the act of 1897 took effect, this relator had not instituted a proceeding by mandamus to compel defendants to carry the street over its tracks; indeed, it had not even acquired the right to institute such a proceeding. If it had attempted to commence proceedings by mandamus at any time before the day on which the act of 1897 went into operation, it would have failed, because, by the terms of the resolution of the common council, the defendant had still seven days within which to comply, or refuse to comply, with the notice given by the city.

On the seventh day of May, 1897, in pursuance of a resolution of the common council of the relator, notices were served upon this defendant and the Erie Railroad Company to take Tenth street, which was laid down upon a general map of the city, across their respective tracks. These notices were given in pursuance of the provisions of chapter 62 of the Laws of 1853 (*supra*), and later on and in conformity with other provisions of that statute the common council by resolution extended the time within which the defendant was required to do such work until the 7th day of July, 1897. Until that date, therefore, the city could not have acquired the right to compel the defendant by mandamus to take the street across

its tracks, had the act of 1853 continued in force.    Between the 7th days of May and July the legislature passed chapter 754 of the Laws of 1897, which act took effect on the 1st day of July, or seven days prior to the termination of the period given the defendant by the city to take the street across the tracks.    The latter act radically altered the procedure by which highways are to be carried across railroad tracks, a change of procedure made necessary by the radical change in the public policy of the State looking towards the ultimate abolition of the crossing of highways at grade by the tracks of steam railroads.    It provides a complete scheme as to crossings, whether the tracks of the railroad cross streets already laid out or streets newly laid out, opened or extended across the tracks of a railroad already in existence, or the change in the grade of an existing crossing, and commits the regulation of the manner of making and constructing such crossing to the railroad commissioners, who are given authority to determine whether a given street, avenue or highway shall pass over or under a railroad, or at grade.    The last section contains a repealing clause affecting all acts inconsistent with it, by which the act of 1853 was necessarily repealed.

The right of all municipalities to lay out streets across the property of a railroad remains unaffected by this legislation; but it does take away from them the right of their own motion to compel a railroad to take a street across its tracks at grade. A municipality may desire that it be so taken, to save expense to itself or for some other reason, but the power to determine whether its wish will be given effect has, since the 1st day of July, 1897, been committed to the judgment of the railroad commissioners.    Many attempts have been made since the passage of that act to thwart the policy of the law-making power to avoid grade crossings; in some instances proceedings to open streets were instituted by the municipal authorities after the act of 1897 had been passed, but, of course, before it took effect.    Indeed, in one instance, the notice, which the act of 1853 provided should be served upon a railroad corporation, notifying it to take a street across its railroad tracks

within thirty days, was served only two days before the act of 1897 took effect. (*Matter of the Village of Waverly*, 35 App. Div. 38.)

It would be unfortunate if such attempts to subvert the policy of the state could have such support in the statutes as would make them effectual, but, as we read them, they have no such support. The act of 1853 was repealed by that of 1897, and, therefore, since the 1st day of July of that year the procedure provided by the latter act must be resorted to in all attempts to take a street across the tracks of a steam railroad — a procedure that requires, in the first instance, a determination by the railroad commissioners whether the street shall pass under or over the tracks of such a corporation, or at grade. But where the right to institute proceedings by mandamus was acquired, and the proceedings commenced prior to the 1st day of July, 1897, to compel a railroad to take a street across its tracks, the right to prosecute that proceeding to the end in the courts is preserved by section 31 of the Statutory Construction Law.

The order should be affirmed, with costs.

All concur.

Order affirmed. _____